IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TINA R. C.,[1]

      Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civil No. 17-cv-868-JPG-CJP

## **MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff Tina R. C., represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

### **Procedural History**

Plaintiff applied for benefits on March 2, 2015, alleging disability beginning in June 2012. However, plaintiff later amended her alleged onset date to March 2, 2015. Plaintiff was denied benefits and requested an evidentiary hearing, which was held on January 28, 2016, by Administrative Law Judge (ALJ) Kevin R. Martin. ALJ Martin denied the application on March 31, 2016. (Tr. 18-30.) The Appeals Council denied review, and ALJ Martin's decision became the final agency decision subject to judicial review. (Tr. 1-6.) Administrative remedies have been exhausted and a timely complaint was filed with this Court.

### **Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ committed reversible error when he failed to account for plaintiff's moderate limitations in maintaining concentration, persistence, and pace in assessing

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

plaintiff's mental residual functional capacity (RFC).

2. Because the vocational expert (VE) was not asked to account for plaintiff's moderate limitations in maintaining concentration, persistence, and pace, the ALJ's decision at step five was not supported by substantial evidence.

## **Applicable Legal Standards**

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines "disabled" as "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 1382c(a)(3)(D). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 416.972.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 416.920(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but that the impairment is neither listed in nor equivalent to the impairments in the regulations— failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the

burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The Decision of the ALJ

ALJ Martin followed the five-step analytical framework described above. He determined that plaintiff had not engaged in substantial gainful activity since March 2, 2015, the application and alleged onset date. He found plaintiff had severe impairments of degenerative disc disease; osteoarthritis; COPD; fibromyalgia; obesity; bilateral carpal tunnel syndrome status post release on the right; history of plantar fasciitis; major depressive disorder; personality disorder; and a

3

history of substance abuse. However, the ALJ found that none of her impairments individually or in combination met or medically equaled the severity of a listed impairment. The ALJ did find plaintiff had moderate deficiencies in social functioning and moderate difficulties with concentration, persistence, or pace. (Tr. 26.)

ALJ Martin found plaintiff had the RFC to perform light work with physical and mental limitations. The ALJ found plaintiff's mental limitations are that "[s]he is limited to understanding, remembering, and carrying out short, simple instructions on a sustained basis in a work setting that does not require interaction with the general public in the work setting." (Tr. 22.)

Based on testimony from a VE, ALJ Martin found plaintiff was incapable of performing any past relevant work, but that other jobs existed in significant numbers within the national economy when considering plaintiff's age, education, work experience, and RFC.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. As plaintiff addresses only her mental limitations, a discussion of the medical evidence related to her physical condition is unnecessary.

1. **Agency Forms**

Plaintiff was born in October 1965 and was forty-nine years old in March 2015 when she applied for SSI. (Tr. 326.) She was homeless, temporarily staying in shelters, and had no income or resources other than her medical card and benefits from the supplemental nutrition assistance program (SNAP). (Tr. 327.) Plaintiff's highest level of educational attainment is twelfth grade; she never attended or completed any type of vocational training school or college.

(Tr. 347.)  She had some full-time work experience within the past fifteen years as a nursing home cleaner and convenience store sales-clerk.  However, she indicated that she stopped working in January 2013 because of her conditions.  (Tr. 346-47.)

Plaintiff, who was five feet seven inches tall and two hundred twenty pounds without shoes, alleged the following twelve conditions limited her ability to work:  bipolar disorder, depression, fibromyalgia, bulging disc, carpal tunnel syndrome of both left and right hands and wrists, degenerative disc and joint disease, borderline personality disorder, spinal stenosis, COPD, osteoarthritis (left knee and foot), plantar fasciitis, and insomnia.  (Tr. 346.)  In March 2015, plaintiff was taking Albuterol for COPD, Viibryd for depression, and Xanax for anxiety.  (Tr. 349.)

### 2. Evidentiary Hearing

Contrary to the Commissioner's brief (Doc. 21 at 12), plaintiff was not represented by an attorney at the January 2016 hearing, but she did have a non-attorney representative present with her.  (Tr. 18; 36-74.)  Plaintiff and VE Linda L. Jones were both sworn and testified under oath during the hearing.  (Tr. 36-74.)

Of most relevance, plaintiff informed the ALJ of her mental or emotional problems that she thinks affect her ability to work.  (Tr. 54-55.)  Plaintiff cited her major depression diagnosis.  She briefly discussed her husband's incarceration and his recent release prior to the hearing.  However, plaintiff's biggest mental and emotional concern for herself was that she had recent suicidal thoughts and a history of attempts.  (Tr. 54; 590.)  She explained she did not presently think she would commit suicide because she wanted to see her sons again one day.[2]  (Tr. 54.)  Plaintiff testified her psychiatrist, Dr. Rakesh Chandra, prescribes Xanax and Viibryd for her

---

[2] Plaintiff surrendered her parental rights to her sons, who were later adopted.  Plaintiff was no longer able to speak to her sons; nor, had she seen her sons in approximately two years at the time of the January 2016 hearing.  (Tr. 54.)

mental and emotional problems. (Tr. 55.)

The ALJ quickly transitioned away from plaintiff's mental and emotional health and back to asking plaintiff about her physical abilities. (Tr. 56-57.) Then plaintiff was questioned by her representative. Plaintiff reported poor sleep. She attributed her poor sleep to battling racing thoughts. She associated her racing thoughts with her bipolar disorder diagnosis. In combination with her bipolar diagnosis, she indicated her poor sleep was also impacted by what happened to her throughout the day. (Tr. 61.) She said she was just prescribed a new sleeping medication, Mirtazapine, but it did little to help her sleep. After taking the medication, she could only sleep for about an hour before awaking again. Plaintiff further explained that with her lack of sleep, she becomes very tired throughout the day. Plaintiff even mentioned her lack of sleep has taken a toll on her physically, especially noticeable in her appearance. (Tr. 62.)

When asked whether she had difficulty concentrating and paying attention, plaintiff described her experience by saying, "My mind is… it's like I might be on something and then I suddenly think about something else and I'm on that." (Tr. 62-63.) Plaintiff also testified that for a while, she has struggled with becoming distracted. (Tr. 63.) Plaintiff guessed that she could only concentrate on something for eight minutes before becoming distracted. (Tr. 63.)

After plaintiff's representative finished her examination, the ALJ took testimony from the VE. (Tr. 68-72.) The VE answered the ALJ's three hypothetical questions that corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work of nursing home cleaner but that other jobs existed that this person could perform. At a light exertional level, the VE pointed to mail clerk (non-postal), retail trade marker, and office helper jobs. The VE cut the total job numbers in half for the retail trade marker and office helper. She explained she reduced the job numbers for the office helper by half because those positions

6

require some interaction with the general public. The other reduction was based on physical limitations. (Tr. 70-72.)

3. **Medical Evidence**

The records indicate plaintiff sought regular mental health treatment leading up to her alleged onset date and after it. She was treated primarily for depression and anxiety. The records indicate that in addition to her depression and anxiety, her diagnoses at times included bipolar disorder, schizoaffective disorder, adjustment disorder, and personality disorder. (Tr. 475-572; 573-657; 686-93; 694-709; 732-45; 795-824.)

She saw her psychiatrist, Dr. Rakesh Chandra, and a primary care physician during the applicable time period. For her primary care, she saw Dr. Aaron Newcomb until July 2015 when she transferred her primary care to Dr. Dale Blaise. Dr. Blaise's records indicate he monitored plaintiff's mental health some; however, the records show Dr. Chandra primarily treated and managed plaintiff's mental health and medication. (Tr. 658-85; 732-45.) Plaintiff began seeing Dr. Chandra through Shawnee Behavioral Health in June 2014 for mental health treatment and medication management. Plaintiff's primary diagnosis changed from schizoaffective disorder to major depressive disorder in February 2015 and remained as such through September 2015. (Tr. 795-824.)

Plaintiff took medication to treat her mental health diagnoses. She took Viibryd, Xanax, Ambien, and Hydroxyzine. (Tr. 803; 809.) In August 2015, she switched to Elavil for her poor sleep and mood; her Ambien was discontinued as a result. (Tr. 810-11.) A month later her Hydroxyzine was discontinued when her Elavil dosage increased. (Tr. 812.)

Despite taking medication, nearly all records documented plaintiff's ongoing depression and anxiety. (Tr. 690; 795-824.) Most reports indicated plaintiff regularly exhibited agitation

7

and irritability. (Tr. 692; 795-824.) Her ability to focus during conversation was regularly compromised; more times than not, her thought process was not linear. Rather, she would provide tangential information and at times stray completely off topic. Most times she required external redirection to get back on topic. (Tr. 712; 795-824.) Further, her insight and judgment were usually noted as fair, but on occasion they were noted as poor. (Tr. 692.)

Dr. Chandra regularly recorded plaintiff's mental status. Plaintiff consistently reported not doing well because her husband was incarcerated and she was homeless throughout the applicable time period. Dr. Chandra noted plaintiff struggled to cope with her husband's absence and other stressors. She also regularly complained of sporadic sleep and severe pain. (Tr. 808) In August 2015, Dr. Chandra noted plaintiff appeared disheveled and that her thought process was circumstantial rather than linear; she provided unnecessary details and her focus drifted. Plaintiff was noted to be anxious, and she reported experiencing increased anxiety. (Tr. 810-11.)

As mentioned above, Dr. Blaise began treating plaintiff in July 2015. He concentrated mainly on her physical health, but he did usually note a mental health diagnosis of adjustment disorder with mixed anxiety and depressed mood at nearly every visit except the November and December 2015 visits. Other than including plaintiff's mental health diagnosis note, Dr. Blaise rarely documented more with regard to her mental health. (Tr. 732-45.) The exceptions where he elaborated were the July 2015 visit and his November 2015 RFC Questionnaire.

In July 2015, Dr. Blaise stated that her current emotional problems included anxiety and depression, and he noted she had a history of the same. After the examination, his assessment included adjustment disorder with mixed anxiety and depressed mood. (Tr. 743-45.) Of most relevance to the issues plaintiff raised, Dr. Blaise's November 2015 RFC Questionnaire included opinions regarding plaintiff's mental illness. (Tr. 825-29.) Dr. Blaise opined that plaintiff was

8

not a malingerer and that her depression, psychological factors affecting her physical condition, anxiety, and personality disorder contributed to the severity of plaintiff's symptoms and functional limitations. (Tr. 826.) Doctor Blaise opined that plaintiff's attention and concentration needed to perform simple work tasks would be frequently disrupted by her severe pain and other severe symptoms. (Tr. 827.)

Dr. Blaise opined plaintiff was capable of low stress jobs. (Tr. 827.) However, he believed plaintiff would need unscheduled breaks approximately every hour during an eight-hour work day, and her breaks would likely last as long as ten to fifteen minutes before she could return to work. (Tr. 828.) He concluded plaintiff's impairments were likely to produce "good days" and "bad days." Last, Dr. Blaise indicated plaintiff's symptoms and limitations had applied since March 2, 2015. (Tr. 829.)

4. **State Agency Consultative Psychological Examination**

Dollean York-Anderson, Ph.D., examined plaintiff on June 17, 2015. (Tr. 710-15.) Dr. York-Anderson specifically noted plaintiff appeared older than her stated age. (Tr. 714.) Plaintiff reported feeling anxious and depressed because of her inability to see her children. (Tr. 712.) Plaintiff also indicated she experienced sleep disturbances and stated, "I keep thinking about my kids." (Tr. 713.) Dr. York-Anderson found plaintiff had only fair social skills and her general mood appeared depressed. She was self-condemning and expressed feelings of inferiority. Plaintiff also volunteered information about herself, but she struggled to stay on topic and to avoid repeating already provided information. She offered tangential information, often requiring help to refocus. (Tr. 714.)

Plaintiff reported problems with concentration in that she easily felt overwhelmed. She exhibited poor sustained attention and concentration skills. She was unable to repeat digits

forwards, but could repeat two digits backwards. Plaintiff was unable to recall any of three words after a five minute interval. Dr. York-Anderson determined plaintiff's recent memory was good, her remote memory was fair, and her immediate memory was poor. (Tr. 714-15.)

Cognitively, Dr. York-Anderson concluded plaintiff's psychomotor activity was limited. Her mood was cooperative, depressed, and anxious. Her affect was congruent with her mood. No psychotic behaviors or delusional thinking were observed, and she denied both suicidal and homicidal ideations. Dr. York-Anderson believed plaintiff's insight and judgment were fair. (Tr. 715.)

4. **State Agency Consultants' Mental RFC Assessment**

Dr. Howard Tin completed the initial "current" psychiatric review technique (PRT) on June 25, 2015. (Tr. 170-84.) He did not examine plaintiff but reviewed Dr. York-Anderson's June 17, 2015, consultative examination; Community Health and Emergency Services, Inc. records; Centerstone records; and Dr. Chandra's records. (Tr. 170-74.) It should be noted Dr. Blaise had not yet completed his November 2015 RFC Questionnaire at the time of Dr. Tin's PRT.

Dr. Tin concluded that plaintiff's diagnoses included bipolar I disorder, most recent episode mixed moderate; depressive disorder; personality disorder, not otherwise specified; and substance dependence. (Tr. 174.) Dr. Tin concluded plaintiff's bipolar disorder, depressive disorder, and personality disorder only mildly restricted her daily living and did not result in repetitive episodes of decompensation. However, he found plaintiff had moderate difficulties with her social functioning and in maintaining concentration, persistence, or pace. (Tr. 175.)

Dr. Tin determined plaintiff had the ability to carry out very short and simple instructions, but found plaintiff had three moderate limitations in maintaining concentration,

10

persistence, and pace affecting her ability to (1) carry out detailed instructions; (2) maintain her attention and concentration for extended periods of time, and (3) work in coordination with or in close proximity to others without becoming distracted. (Tr. 179-81.) He further concluded plaintiff had the ability to respond appropriately to changes in work settings, and specifically concluded plaintiff was capable of performing unskilled work. (Tr. 181.)

Dr. Donald Henson completed the PRT reconsideration on August 4, 2015. (Tr. 186-200.) Again, it should be noted Dr. Blaise had not yet completed the November 2015 RFC Questionnaire at the time of Dr. Henson's PRT reconsideration. Dr. Henson affirmed Dr. Tin's findings. (Tr. 192-93.)

## **Analysis**

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 22; 26.) ALJ Martin made this determination at step three of the sequential analysis when he found plaintiff's impairments did not meet or equal a listed impairment. While step three is not a mental RFC assessment, ALJ Martin noted, "The following residual functional capacity assessment reflects the degree of limitation the

undersigned assessed in the 'paragraph B' mental function analysis, discussed below." (Tr. 22.) However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence, or pace. Rather, the ALJ limited plaintiff to "understanding, remembering, and carrying out short, simple instructions on a sustained basis" and working in an environment that does not require interactions with the public.

The Commissioner argues the ALJ's limits reasonably accommodated plaintiff's mental impairments, given that the state agency psychologists assessed similar limits for carrying out short and simple instructions, and simple tasks that did not require interaction with the general public." (Doc. 21 at 10). However, the Commissioner should not forget that the Court of Appeals for the Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. For example, in *Stewart*, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position numerous times in recent years. *O'Connor-Spinner,* 627 F.3d at 620*; Yurt*, 758 F.3d at 857; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017).

The Commissioner here defends the ALJ's decision by arguing that none of plaintiff's doctors assessed any limitations related to concentration, persistence or pace. Regardless, this is irrelevant here; the ALJ himself found that she had moderate limitations in that area, and said that his RFC assessment would reflect those limitations. Yet, the ALJ failed to discuss the limitations, rendering the Commissioner's argument unavailing.

Further, the Commissioner relies on *Capman v. Colvin*, 617 F. App'x 575, 578-79 (7th Cir. 2015), to argue that ALJ Martin's mental RFC assessment of plaintiff's limitations was adequate because the limits included "short, simple instructions on a sustained basis in a work setting that does not require interaction with the general public." (Doc. 21 at 10). However, *Capman* is a non-precedential order, and it is clear from ALJ Martin's decision that the limitation of "no[] require[d] interaction with the general public…" was meant to accommodate plaintiff's social functioning difficulties rather than her concentration, persistence, or pace difficulties of working in coordination or close proximity with others. (Tr. 26.) These are two different limitations, and each requires consideration; therefore, this argument by the Commissioner also fails.

Last, the Commissioner points to *Parrott v. Astrue*, 493 F. App'x 801, 805 (7th Cir. 2012), to argue that the Court of Appeals for the Seventh Circuit affirmed a decision where the ALJ included "far fewer limits in the VE's hypothetical question" than what ALJ Martin included in his hypothetical to the VE (Doc. 21 at 11). Again, hypotheticals given to VEs must include all impairments established by the record and accepted by the ALJ as credible. *Yurt*, 758 F.3d at 857; *Stewart*, 561 F.3d at 684 (collecting cases). Here, the record includes three moderate concentration, persistence, and pace limitations assessed by the agency's consultative reviewers. (Tr. 180; 196.) The ALJ afforded both reviewers' opinions significant weight, but ignored the limits they assessed. (Tr. 27.) Because ALJ Martin only included "carrying out short, simple instructions," he did not include all impairments and limitations. Therefore, the VE was prevented from considering all of plaintiff's concentration, persistence, or pace impairments and limitations. (Tr. 22; 29; 70-71.)

In sum, ALJ Martin found that plaintiff had moderate difficulties in maintaining

concentration, persistence, or pace, and ALJ Martin represented that the RFC assessment would reflect the degree of limitation that he found. However, ALJ Martin failed to adequately account for such limitations, specifically those limitations regarding working with others and becoming distracted. Binding Seventh Circuit precedent establishes that a limitation to simple, routine tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace.

Because the Commissioner failed to adequately account for limitations as to concentration, persistence, or pace, the ALJ's RFC finding and thus, his finding at step five are not supported by substantial evidence. Therefore, this case must be remanded to the Commissioner for rehearing. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Tina R. C.'s application for SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED**.
**DATE: May 31, 2018**

                                          s/ J. Phil Gilbert
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**